UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00149-GCM

| | |
|---|---|
| WALLY GUTHRIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 9) and the Commissioner's Motion for Summary Judgment (Doc. No. 11). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on September 3, 2010. The Commissioner denied Plaintiff's claim initially and upon reconsideration. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Crawford heard the case on September 12, 2012. Subsequently, the ALJ issued a decision on November 1, 2012, which was unfavorable to Plaintiff, from which Plaintiff appealed to the

1

Appeals Council. Plaintiff's request for review was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II. Factual Background

Because the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind might accept as adequate to support a conclusion" and is "more than a mere scintilla . . . , but may be somewhat less than a preponderance." *Id*. at 1456; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The very language of section 405(g) precludes the Court from reviewing a final decision of the Commissioner *de novo*; it is the responsibility of the ALJ and not the Courts to make findings of fact and to resolve conflicts of evidence. *See* 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hays*, 907

F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court cannot substitute its judgment for that of the Commissioner, even if the Court would have decided differently, so long as the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

## IV. Substantial Evidence

### A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. *See Hays,* 907 F.3d at 1456. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential review," is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v). In this case, the ALJ determined Plaintiff was not disabled at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

Specifically, the ALJ first concluded that the Plaintiff had not engaged in any substantial gainful activity since his protective filing date, September 3, 2010. (Tr. 14). At the second step, the ALJ concluded that the Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, asthma, diabetes mellitus, macular scarring in the right eye, and history of congenital cataracts. *Id.* The ALJ further found that the medical record showed that Plaintiff's hypertension, gastric upset, and abscess of the left hand did not cause more than minimal limitations and, thus, were non-severe impairments. *Id.* At the third step,

the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings, including musculoskeletal listing 1.04, visual listing 2.02, and asthma listing 3.03. *Id., See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ then determined that Plaintiff, despite his impairments, had the RFC to perform sedentary work; needed to stand for two to three minutes after sitting for one hour; could occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and crawl; needed to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; had limited visual acuity in the right eye; would be limited to jobs that would require no more than occasional reading; and could not work at unprotected heights or around dangerous machinery. (Tr. 15).

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work as a cashier or cleaner. (Tr. 22). Finally, at step five, the ALJ determined that, in light of Plaintiff's RFC, age, education, and work experience, and based on the testimony of the vocational expert (VE), Plaintiff could perform jobs existing in significant numbers in the national economy, including representative jobs such as such as dispatcher, information clerk, and fee collector for parking and road. (Tr. 22, 61-69). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 23).

## D. Discussion

Plaintiff has made the following assignment of error: whether the ALJ erred by not including Plaintiff's supplemental oxygen use in the RFC assessment.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

It appears to the Court that the ALJ thoroughly considered Plaintiff's allegations about the need for home oxygen use, but determined that oxygen use should not be included in the RFC. (Tr. 20). In so doing, the ALJ observed that there was little evidence in the record of either emergency room visits or of doctor visits for asthma exacerbations. *Id.* Indeed, even Plaintiff acknowledged that he had not been to the emergency room for an asthma attack since 2009, and that his asthma was controlled by medication. (Tr. 38). Plaintiff points to nine instances in over two years when Plaintiff was not breathing well, was wheezing, or had a congested cough. These instances do not undermine the ALJ's statement that most of Plaintiff's physical examinations showed little to no wheezing. (Tr.

20). The record contains significantly more physical examinations where Plaintiff's lungs were clear (even if breath sounds were slightly diminished or coarse) or where there was no lung examination performed at all. (Tr. 268, 270, 271, 273, 274, 325, 349, 363, 382, 384, 392, 395, 477, 482, 534, 538, 564, 570, 575, 578, 582, 639, 640, 641, 690).

Plaintiff points to his testimony that his treating physician, Bryant Bolin, M.D., prescribed supplemental oxygen. However, the record does not appear to contain any actual prescriptions for oxygen signed either by Dr. Bolin or by any other doctor, and Plaintiff does not cite any exhibit in the record showing such a prescription. The multiple references to oxygen use or oxygen dependence do not constitute a doctor's order for a specified amount of oxygen to be used in a specified period of time, as Plaintiff suggests. More importantly, Dr. Bolin's December 5, 2011 note states, "[p]t has some oxygen that a friend that works for an oxygen company gave him. Pt does not have a script for this." (Tr. 656). The ALJ cited Dr. Bolin's note documenting Plaintiff's comment about getting oxygen from a friend and correctly concluded that Plaintiff's doctors did not prescribe oxygen for him. (Tr. 20).

The ALJ also noted that oxygen did not appear on any of Plaintiff's medication lists. (Tr. 20, 240, 266, 348). Plaintiff argues that this point is irrelevant to oxygen's medical necessity, because he was actually using oxygen.

However, the fact remains that oxygen was not prescribed; thus indicating that it was not medically necessary. Plaintiff's references to instances of wheezing or congested cough do not establish the need for supplemental oxygen. Moreover, Plaintiff's oxygen saturation levels were consistently measured within the normal range, even during times of wheezing or shortness of breath, thereby establishing that Plaintiff did not require supplemental home oxygen. (Tr. 268, 270, 271, 272, 273, 325, 392, 395, 477, 526, 564, 633).

In addition, the ALJ referred to Plaintiff's sleep apnea and to Plaintiff's use of oxygen instead of a continuous positive airway pressure machine, which the ALJ noted could have explained why Plaintiff testified that he was on home oxygen. (Tr. 20, 525). Finally, the ALJ also cited to Plaintiff's poor effort on the pulmonary function test, and the fact that the test administrator made no mention of any oxygen use. (Tr. 20, 444).

In sum, the ALJ gave no fewer than six separate reasons, with citations to the evidence of record, for finding that Plaintiff was not required to use supplemental oxygen, despite his preference for using it. As such, the ALJ performed her duty properly and was not required to include in the RFC any limitations regarding Plaintiff's optional use of supplemental oxygen.

E.  Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignment of error. Review of the entire record reveals that the ALJ's decision is supported by substantial evidence. *See Hays*; 907 F.2d at 1456; *Coffman*, 829 F.2d at 517. Having found that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," (*see Hays*, 907 F.2d at 1456) Plaintiff's Motion for Judgment on the Pleadings is denied, the Commissioner's Motion for Summary Judgment is granted, and the decision of the ALJ is affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 9) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: March 2, 2015

Graham C. Mullen
United States District Judge